**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

RYAN B., o/b/o E.K.B.

                      **Plaintiff,**

v.                                                   **19-CV-1408**

**COMMISSIONER OF SOCIAL SECURITY,**

                      **Defendant.**

**DECISION AND ORDER**

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 11. Plaintiff, on behalf of his minor child, E.K.B., challenges an Administrative Law Judge's determination that E.K.B. is not entitled to benefits under the Social Security Act ("the Act"). Presently before this Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 5, 7. For the reasons set forth below, the Commissioner's motion for judgment on the pleadings (Dkt. No. 7) is granted and Plaintiff's motion (Dkt. No. 5) is denied.

**PROCEDURAL HISTORY**

On April 22, 2016, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits for his son, E.K.B., alleging that he has been disabled by a learning disability and attention deficit hyperactivity disorder ("ADHD") since his birth on September 30, 2009. Tr.[1] at 12, 157-162. The application was denied at the initial level and Plaintiff

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 4.

requested review.  Tr. at 12, 57-69.  Administrative Law Judge Brian LeCours ("ALJ") conducted an administrative hearing on September 26, 2018.  Tr. at 31-56.  Plaintiff and E.K.B., who were represented by counsel, testified.  Tr. at 31-56.  On October 31, 2018, the ALJ issued a decision finding that E.K.B. was not disabled.  Tr. at 12-25.  The Appeals Council denied his request for review, making the ALJ's determination the final decision of the Commissioner.  Tr. at 1-6.  Plaintiff thereafter commenced this action seeking review of the Commissioner's decision.  Dkt. No. 1.

## DISCUSSION

**Standard of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the district court must only determine whether the Commissioner applied the appropriate legal standards in evaluating the plaintiff's claim, and whether the Commissioner's findings were supported by substantial evidence in the record.  *See Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir. 1983).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the Court finds no legal error, and that there is substantial evidence for the Commissioner's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position.  *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir.

1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**SSI Standard for Determining a Child's Disability**

An individual under the age of 18 is considered disabled when he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act.  *See* 20 C.F.R. §§ 416.924(a)-(d).

First, the ALJ determines whether the child is engaged in any substantial gainful activity.  20 C.F.R. § 416.924(b).  Second, if the child is not engaged in any substantial gainful activity, the ALJ determines whether the child has a medically severe impairment or combination of impairments that cause "more than a minimal functional limitation."  20 C.F.R. § 416.924(c).  Third, the ALJ determines whether the child's severe impairment(s) meets, medically equals, or functionally equals the criteria of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See Conlin*, 111 F. Supp. 3d at 384-85.

If a child's impairment medically meets or equals a listed impairment, he or she will be found disabled.  20 C.F.R. § 416.924(d)(1).  If not, the ALJ must assess the functional limitations caused by the child's impairments in six domains:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926(a), (b)(1).  A child is classified as disabled if he or she has a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).  "A 'marked' limitation exists when the impairment 'interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities.'"  *Hart v. Colvin,* No. 12-CV-1043-JTC, 2014 WL 916747, at *3 (W.D.N.Y. Mar. 10, 2014) (citing 20 C.F.R. § 416.926a(e)(2)(i)).  "An 'extreme' limitation is an impairment which 'interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities.'"  *Id.* (citing 20 C.F.R. § 416.926a(e)(3)(i)).

**The ALJ's Decision**

After reviewing the record, the ALJ determined that E.K.B. had the severe impairments of oppositional defiant disorder, ADHD, and a learning disability.  Tr. at 15.  These impairments did not, in the ALJ's opinion, meet or medically equal a listed impairment.  Tr. at 15-16.  The ALJ then determined that E.K.B. had "less than marked limitations" in the domains of acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for himself; and his health and physical well-being.  Tr. at 17-25.  Because E.K.B.'s impairments did not result in two "marked" limitations or one "extreme" limitation, the ALJ concluded that E.K.B. was not disabled.  Tr. at 25.

4

Plaintiff disagrees with the ALJ's decision, and argues that E.K.B. is more limited in the domains of interacting with others and caring for himself than the ALJ determined. He argues that the ALJ erred by giving "some weight" to the opinions of E.K.B's teachers and "significant weight" to that of Dr. T. Inman-Dundon, the State Agency consultative examiner in finding less than marked limitations in these two domains.

**Interacting and Relating with Others**

The domain of interacting and relating with others considers a child's ability to initiate and respond to exchanges with other people and to form and sustain relationships with family members, friends, and others. 20 C.F.R. § 416.926(a)(i); SSR 09-5p. This domain includes all aspects of social interaction with individuals and groups at home, at school, and in the community. SSR 09-5p provides examples of typical functioning in the domain of interacting and relating with others for a school-aged child like E.K.B. These include the ability to: develop more lasting friendships with same-age children; increasingly understand how to work in groups to create projects and solve problems; increasingly understand another's point of view and tolerate differences; attach to adults other than parents; and share ideas, tell stories, and speak in a manner that can be readily understood by familiar and unfamiliar listeners.

E.K.B.'s medical and school records show that he had less than marked limitations in this domain during the relevant period. In a Function Report dated May 17, 2016, E.K.B.'s father reported that the boy had friends his own age, could make new friends, and generally got along with his father and teachers. Tr. at 153. After examining E.K.B. on October 7, 2016, Dr. Jane Ippolito, the consultative examiner, observed that the boy's

5

manner of relating, social skills, and overall presentation were adequate.  Tr. at 276.  She noted that E.K.B. had friends at school and kept in touch with his brother and cousins.  Tr. at 278.  He enjoyed playing football, which is a team sport.  Tr. at 278.  Dr. Ippolito observed that Plaintiff interacted adequately with adults with no evidence of limitations.  Tr. at 278.  He could attend to, follow, and understand age-appropriate directions and interact adequately with peers with only mild limitations.  Tr. at 278.

   E.K.B.'s Second Grade teacher, Ms. Porter, noted that he experienced some difficulties with communication and conversation, but he had no problem with playing cooperatively with other children, making and keeping friends, seeking attention and asking permission appropriately, following rules, and respecting/obeying adults in authority.  Tr. at 203.  In her report card at the end of Second Grade, Ms. Porter rated Plaintiff's behavior as "excellent" in following directions and respecting others' rights, feelings, and property.  Tr. at 409.  She remarked that he was "such a kind and respectful student," and that "[h]e has such a good heart and was always there for a friend in need." Tr. at 411.  For the 2017-2018 school year, E.K.B.'s Third Grade teacher, Ms. Strible assessed E.K.B.'s abilities in the areas of listening attentively, following directions, resolving conflicts appropriately, and respecting others' rights, feelings, and property as 3 out of 4.  Tr. at 405.  E.K.B.'s ability to demonstrate self-control was rated as "excellent."  Tr. at 405.  Ms. Strible, remarked that E.K.B. was "a pleasure to have in class" and that he was "kind and respectful towards others."  Tr. at 407.

   Testimony given during the administrative hearing was also consistent with a less than marked limitation in this domain.  Although E.K.B.'s father complained about his behavior, E.K.B. testified that he attended summer camp for six weeks and played

6

unsupervised with friends outside his house.  Tr. at 37-38, 43.  He further testified that at school, he ate lunch with his friends, played with them during gym, and cooperated with his teachers.  Tr. at 39.  *See Ruffins o/b/o C.W. v. Comm'r of Soc. Sec.*, No. 17-CV-1203-MJR, 2019 WL 1723516 at *3 (W.D.N.Y. Apr. 17, 2019) (substantial evidence supported the finding of a less than marked limitation in the domain of interacting and relating with others where the child had friends his own age but did not get along with adults or teachers and did not play team sports).  Therefore, substantial evidence shows that, although E.K.B. had some limitations, he was not markedly limited in the domain of interacting and relating with others.

This Court notes that much of the behavior to which Plaintiff cites to show that E.K.B. is markedly limited in interacting and relating with others occurred before the relevant period, when E.K.B. was a younger child.  Dkt. No. 5-1, pp. 2-3, 19.  The overall record shows that, as E.K.B. grew older, his symptoms also improved.  Tr. at 501, 503.  For example, School Psychologist Kelly Jaszka noted that when E.K.B. transitioned from preschool to elementary school at age 5 in 2014, the Committee of Special Education found that E.K.B. was no longer eligible for special education services.  Tr. at 244.  Ms. Jaszka reached the same conclusion in February 2016, when E.K.B. was 6 and ½ years old, after performing a full psycho-educational evaluation of E.K.B. at the request of the boy's father.  Tr. at 244-47 ("Based on teacher reports, previous evaluation results, and thorough review of his records, it appears that [E.K.B.] does not . . . qualify for academic or behavioral special education services at this time.").  By Fourth Grade, E.K.B. was attending regular classes and his father reported that he no longer took ADHD medication because his symptoms had improved.  Tr. at 501-503.

**Caring for Oneself**

The domain of caring for oneself considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways.  20 C.F.R. § 416.926(a)(k); SSR 09-7p. This domain includes how the child copes with stress and changes in the environment and how well the child takes care of his own health, possessions, and living area.  SSR 09-7p provides examples of typical functioning in the domain of caring for oneself for a child of Plaintiff's age.  These include the ability to recognize circumstances that lead to feeling good and bad about oneself; develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior; demonstrate consistent control over behavior and avoid behaviors that are unsafe; begin to imitate more of the behavior of adults the child knows; and perform most daily activities independently (for example, dressing, bathing), with occasional reminders.

E.K.B.'s medical and school records show that he had a less than marked limitation in caring himself as well.  In a Function Report dated May 17, 2016, E.K.B.'s father reported that his impairments did not affect his ability to help himself or cooperate with others in taking care of personal needs.  Tr. at 154.  E.K.G. could complete his homework and complete chores most of the time, but he could not keep himself busy, finish things he started, or work on arts and crafts projects.  Tr. at 155. Dr. Jane Ippolito, the consulting examiner, opined that E.K.B. was able to respond appropriately to changes in the environment, ask questions and request assistance in an age-appropriate manner, be aware of danger and take needed precautions, and interact adequately with adults with no evidence of limitations.  Tr. at 278.

8

E.K.B.'s Second Grade teacher, Ms. Porter, opined that E.K.B. had "a slight problem" with using good judgment regarding personal safety and dangerous circumstances, responding appropriately to changes in his own mood, and using appropriate coping skills to meet the daily demands of the school environment. Tr. at 205. But E.K.B. had "no problem" with taking care of his personal hygiene, knowing when to ask for help, and caring for his physical needs, such as dressing and eating. Tr. at 205. In his final Second Grade report card, Ms. Porter rated E.K.B.'s behavior as "satisfactory" with regard to using time effectively to produce quality work and organizing himself and materials. Tr. at 409. In his Third Grade report card, Ms. Strible rated E.K.B.'s ability to demonstrate self-control as "excellent." Tr. at 405. She stated that he had "adjusted well to the pace of third grade." Tr. at 407.

During the administrative hearing, E.K.B. testified that he performed household chores, such as cleaning the bathroom and the living room. Tr. at 38, 43. E.K.B. stated that when he got into a fight with another child, he subsequently felt sorry and would apologize. Tr. at 35. As previously noted, E.K.B. managed himself in summer camp for the duration of six weeks. Tr. at 36. This constitutes substantial evidence that E.K.B. had a less than marked limitation in caring for himself. *See Laboy obo ASC v. Saul*, No. 1:18-CV-00825(JJM), 2019 WL 6485172, at *6 (W.D.N.Y. Dec. 3, 2019) (citing *D.L.K. by Brink v. Comm'r of Soc. Sec.*, No. 1:16-CV-0907 GTs/WBC, 2017 WL 1843277, *5 (N.D.N.Y. 2017)) ("[A]lthough Claimant had some degree of difficulty in [the domain of caring for oneself], the ALJ's determination is supported by substantial evidence in the record. The record indicates that Claimant could care for his physical needs such as hygiene and eating. The record contains notations that Claimant struggled in coping with stress at home; however,

9

medication and therapy were helping him implement coping skills which were apparent in therapy and school").

This Court notes that E.K.B's home life was very tumultuous when E.K.B. was between 5 and 6 years old, when he was exhibiting the worst of his behavior. Tr. at 355. In an April 27, 2016 report, E.K.B.'s doctor, Martin Hoffman, M.D. noted:

> E.K.B. is 6 years old.  He was seen earlier this year for problems with aggressio[n.] He has been in the custody of his father and his dad's fiancé who lives with them. Prior to October[,] he was in foster care for several months and before that in the care of his mom. [Dad's] fiancé is a counselor at Child and Family Services and has helped establish better home behavior systems.  He is doing better at home.

Tr. at 355. This upheaval in E.K.B.'s life could very well be the cause of his early difficulties in handling stress and communicating his needs. It was, at a minimum, a contributing factor to the challenging behaviors E.K.B. exhibited early on. Nonetheless, the record shows that despite a difficult start, E.K.G.'s ability to respond to change and manage stress improved over time with interventions at home and in school. Based on the foregoing, the Court finds that there is substantial evidence that although E.K.B. had some limitations, he was not markedly limited in the domain of caring for himself.

**The ALJ's Evaluation of the Opinion Evidence**

Plaintiff argues that the ALJ "failed to adequately explain or support his decision to give only 'some weight' to the opinions of the examining physicians and classroom teachers, while giving 'significant weight' to the opinions of non-examining consultants," Dkt. No. 5-1, pp. 14-18, and that "the ALJ's error in failing to properly explain

why he discounted the opinions of Dr. Ippolito, Ms. Hackett, and Ms. Porter was not harmless." Dkt. No. 5-1, p. 17. This Court does not agree.

As an initial matter, the law is clear that "[t]he ALJ is obligated to formulate a claimant's RFC based on the record as a whole, not just upon the medical opinions alone." *Hochstine v. Comm'r of Soc. Sec.*, No. 1:18-cv-699-DB, 2019 WL 5448287 at *6 (W.D.N.Y. Oct. 23, 2019); 20 C.F.R. § 4040.1527(b) (stating that the Commissioner "will always consider the medical opinions in your case record together with the rest of the relevant evidence."). As his decision makes clear, the ALJ considered E.K.B.'s testimony and that of his father, his school records, including his report cards, his school assessment denying his father's request for special education services as well as the doctors' opinions regarding E.K.B.'s functional abilities.

Moreover, teachers are not considered acceptable medical sources. *See* 20 C.F.R. § 416.913(a). Rather, teachers are considered "other sources," whose opinions are not entitled to controlling weight. *Piatt v. Colvin*, No. 13-CV-6436 EAW, 80 F.Supp.3d 480, 493, 2015 WL 274180, at *12 (W.D.N.Y. Jan. 22, 2015); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 386-87 (W.D.N.Y. 2015) (stating that "[i]t is well established that teacher questionnaires are considered valid 'other source' opinions"). Ultimately, the ALJ is "free to decide that the opinions of 'other sources' . . . are entitled to no weight or little weight, [though] those decisions should be explained," as the ALJ did in this case. *See Oaks v. Colvin*, No. 13-CV-917-JTC, 2014 WL 5782486, at *8 (W.D.N.Y. Nov. 6, 2014) (quoting *Sears v. Astrue*, No. 2:11-CV-138, 2012 WL 1758843, at *3 (D. Vt. May 15, 2012)); *Conlin*, 111 F. Supp. 3d at 386.

Contrary to Plaintiff's argument, the ALJ did not "discount" the opinions of E.K.B's teachers, but rather gave them "some weight," reasoning that "as teachers they have spent a significant amount of time with the claimant and are able to provide a relevant assessment of the claimant's functioning." T. at 24. In this regard, the ALJ's conclusions that E.K.B. had a less than marked limitations in interacting with others and caring for himself are generally consistent with his teachers' observations. Tr. at 24, 203, 405, 407, 409, 411. The ALJ was justified in assessing less than controlling weight to the teachers' opinions to the extent that they assessed a greater limitation.

To prevail on his claim, Plaintiff must show that E.K.B. was disabled between the date his application was filed on April 22, 2016, and October 31, 2018, the date of the ALJ's decision. Tr. at 13; Dkt. No. 7-1, p. 1 n.2. (citing 20 C.F.R. § 416.335). Mrs. Hackett, E.K.B.'s First Grade teacher, who assessed the greatest limitations, taught E.K.B. for only two months during this period. In this regard, Mrs. Hackett's opinion regarding E.K.B.'s functioning is not as probative as those of his later teachers. Furthermore, some of Ms. Hackett's opinions were inconsistent with the evidence of record as a whole. For example, Ms. Hackett stated that Plaintiff displayed "serious" problems with playing cooperatively with other children and making and keeping friends (Tr. at 175), but E.K.B. testified to having friends both at home and at school (Tr. at 37-39). Ms. Porter, E.K.B.'s Second Grade teacher, reported that Plaintiff had no problems with playing cooperatively with other children and making and keeping friends. Tr. at 203. Similarly, while Ms. Porter stated that Plaintiff had "an obvious problem" with using language appropriate to the situation and listening and taking turns in a conversation (Tr. at 203), E.K.B. did not display these limitations during the hearing before the ALJ, and Dr. Ippolito noted that Plaintiff's manner of relating, social skills,

and overall presentation were adequate. Tr. at 35-39, 276. Therefore, the ALJ did not err in giving Ms. Hackett's and Ms. Porter's opinions "some weight."

Consultant examiner, Dr. Ippolito, concluded that the results of E.K.B.'s evaluation were consistent with psychiatric problems but that these problems were not "significant enough to interfere with [E.K.B.'s] ability to function on a daily basis." Tr. at 278. The ALJ afforded "some weight" to Dr. Ippolito's opinion because it was "consistent with the findings during the consultative examinations and consistent with treatment notes from the claimant's pediatrician's office." Tr. at 24. These are appropriate reasons to afford some weight to a medical opinion. 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Moreover, Dr. Ippolito's conclusion was largely consistent with the ALJ's finding that E.K.B. had less than marked limitations in interacting with others and caring for himself.

Lastly, Plaintiff argues that the ALJ "inappropriately based his decision on the opinion of non-examining state psychology consultant Dr. Inman-Dundon. Dkt. No. 5-1, pp. 17-18. State agency consultants are highly qualified physicians, psychologists, and other medical specialists who are experts in Social Security disability evaluation. *See* 20 C.F.R. § 404.1527(e)(2)(I). Although the opinions of non-examining sources are generally given less weight than examining sources, this is not an absolute rule. In appropriate cases, a non-examining medical expert may override an examining source, even a treating source, if the

13

opinion is supported by evidence in the record.  See *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016); *Snyder v. Colvin*, 667 F. App'x 319, 320 (2d Cir. 2016); *Monette v. Colvin*, 654 F. App'x 516, 518-19 (2d Cir. 2016); see *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

After reviewing the entire record, Dr. T. Inman-Dundon and Dr. J. Meyer jointly opined that E.K.B. had less than marked limitations in all of the domains, including interacting and relating with others and caring for himself.  Tr. at 64-65.  With respect to interacting and relating with others, the doctors noted that E.K.B. was doing better after he was taken out of foster care to live with his father and his father's counselor fiancé, that he was cooperative during examinations, and that E.K.B.'s doctor did not see enough evidence to diagnose him with ADHD.  Tr. at 65-66.  In finding that he was less than marked in caring for himself, the doctors observed that E.K.B. did not have frequent absences, and that his psychiatric evaluator concluded that E.K.B. was able to respond appropriately to changes in the environment, ask questions and request assistance in an age-appropriate manner, be aware of danger, attend to, follow and understand age-appropriate directions, and interact adequately with his peers.  Tr. at 65.

The ALJ gave the opinion "significant weight" because it was "consistent with the evidence, including the later-adduced evidence."  Tr. at 24.  This Court finds that the ALJ's greater reliance on the opinion of Dr. Inman-Dundon and Dr. Meyer was not erroneous.  The mere fact that Dr. Inman-Dundon and Dr. Meyer were not treating physicians did not preclude the ALJ from crediting their joint opinion, because it was consistent with the

objective medical evidence.  See *Mongeur*, 722 F.2d at 1039 ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence . . . and the report of a consultative physician may constitute such evidence."); *Petrie v. Astrue*, 412 F. App'x 401, 405-06 (2d Cir. 2011) (holding that the ALJ rightly concluded that the two consultative psychologists' opinions that plaintiff was able to perform unskilled work were entitled to controlling weight because they were well supported and consistent with the record; and moreover, the opinions constituted substantial evidence in support of the ALJ's RFC).

In sum, the ALJ evaluated E.K.B.'s functional impairments based on the record as a whole, including testimony from Plaintiff and E.K.B., E.K.B.'s treatment and school records, and the opinions of Ms. Hackett, Ms. Porter, Dr. Ippolito, Dr. Inman-Dundon, and Dr. Meyer.  Tr. at 17-27.  Plaintiff cites to evidence in the record that E.K.B. had behavioral issues in preschool, but has failed to show how those behaviors translate to greater deficits than those found by the ALJ.  When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder."  *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)); *see also Rutherford*, 685 F.2d at 62 (explaining that courts reviewing the Commissioner's factual findings would be "derelict in our duties" if we "shap[ed] our holding to conform to our own interpretation of the evidence").

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record[,] and both may be affirmed as supported by substantial

evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012).  That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder ***would have to conclude otherwise***."  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis added).  This case does not present such a situation.  For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 5) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 7) is GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:    Buffalo, New York
          March 8, 2021

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**